## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| RANDY MCMILLAN, MICHAEL DAVIS, EMIKLAJD ZEQAJ, TASHA MARTIN, KEVIN KOEHLER, DANIEL JASO, CHRISTOPHER THOMAS, DWAYNE WILLIAMS, ROBERT JACKSON, MARLON BUTLER, MICHAEL DANIELS, JOHN RANSUM, VICTOR M. ARROCHA, SOLOMON SMITH, JR., DAVID MARTINEZ, CALVIN DANIELS, and ANGEL DE JESUS SALINAS, | ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| RELIABLE EXPRESS TRANSPORT, INC., UNITED DELIVERY SERVICE, LTD., and JOHN CASTALDO, | ) ) ) |
| | ) |
| Defendants. | ) ) |

Civil Action No. 17-cv-5161

## COLLECTIVE ACTION COMPLAINT

Plaintiffs, Randy McMillan, Michael Davis, Emiklajd Zeqaj, Tasha Martin, Kevin Koehler, Daniel Jaso, Christopher Thomas, Dwayne Williams, Robert Jackson, Marlon Butler, Michael Daniels, John Ransum, Victor M. Arrocha, Solomon Smith, Jr., David Martinez, Calvin Daniels, and Angel de Jesus Salinas, individually and on behalf of others similarly situated, complain against Defendants Reliable Express Transport, Inc., United Delivery Service, Ltd., and John Castaldo (collectively, "Defendants") alleging claims under the Fair Labor Standards Act ("FLSA"), the Illinois Wage Payment and Collection Act ("IWPCA"), and the Illinois Minimum Wage Law ("IMWL"). Plaintiffs bring their FLSA claims as a putative collective action, pursuant to 29 U.S.C. § 216(b).

## Introduction

1. This wage and hour lawsuit arises from Defendants' misclassification of Plaintiffs as independent contractors rather than employees. Defendants operate a package delivery company, and they uniformly classify their delivery drivers as independent contractors, despite exerting significant control over how the drivers perform their work. Defendants have classified Plaintiffs as independent contractors to avoid paying drivers overtime and minimum wages and to avoid paying for unemployment benefits and workers' compensation insurance.

2. Defendant Reliable Express Transport ("RET") signed Illinois Commerce Commission leases with Plaintiffs, pursuant to 92 Ill. Admin. Code § 1360.40. In those leases, RET agreed to pay Plaintiffs 56.5% of all delivery charges collected from deliveries that Plaintiffs performed. Defendants uniformly shortchanged the Plaintiffs by paying them less than the rate outlined in those leases.

3. Plaintiffs now seek to recover unpaid overtime and minimum wages, pursuant to the FLSA and IMWL. Plaintiffs also seek to recover wages they are owed under their equipment leases, pursuant to the IWPCA.

## Parties

4. United Delivery Service ("UDS") advertises itself as "Chicago's leading Midwest regional carrier." UDS controls a second corporation, Reliable Express Transport ("RET"), which performs the deliveries that UDS sells to its customers. UDS and RET are both headquartered at 1111 N. Ridge Ave., Lombard, IL.

5. Defendant UDS is owned by John Castaldo. At all relevant times, Castaldo was aware that Plaintiffs were misclassified as independent contractors and that UDS/RET couriers

routinely worked in excess of forty hours in a workweek without receiving overtime premium pay and without receiving the minimum wage.

6.      At various times during the past five years, Plaintiffs worked for Defendants as couriers delivering packages using their own vehicles. Defendants had a uniform practice of misclassifying its couriers as independent contractors.

7.      Randy McMillan worked as a courier for UDS and RET from approximately 2015 to 2017. During his employment with UDS and RET, he performed his work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.[1]

8.      Michael Davis has worked as a courier for UDS and RET from approximately 2013 to the present. During his employment with UDS and RET, he has performed his work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

9.      Emiklajd Zeqaj worked as courier for UDS and RET from approximately 2011 to 2016. During his employment with UDS and RET, he performed his work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

10.     Tasha Martin worked as a courier for UDS and RET in approximately 2015 and 2016. During her employment with UDS and RET, she performed her work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

11.     Kevin Koehler has worked as a courier for UDS and RET from approximately 2016 to the present. During his employment with UDS and RET, he has performed his work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

---

[1] The FLSA exempts from overtime coverage employees who drive a vehicle for a motor carrier and transport goods in interstate commerce. 29 U.S.C. § 213(b)(1). This exemption does not apply, however, to employees of a motor carrier who drive a vehicle with a gross vehicle weight rating of 10,000 pounds or less. *See* Pub. L. No. 110-244, Title III, § 306, 122 Stat. 1572, 1620 (2008) (Safe, Accountable, Flexible, Efficient Transportation Equity Act).

12. Daniel Jaso worked as a courier for UDS and RET from approximately 2016 to 2017. During his employment with UDS and RET, he performed his work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

13. Christopher Thomas has worked as a courier for UDS and RET from approximately 2015 to the present. During his employment with UDS and RET, he has performed his work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

14. Dwayne Williams has worked as a courier for UDS and RET from approximately 2014 to the present. During his employment with UDS and RET, he has performed his work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

15. Robert Jackson has worked as a courier for UDS and RET from approximately 2016 to the present. During his employment with UDS and RET, he has performed his work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

16. Marlon Butler has worked as a courier for UDS and RET from approximately 2016 to the present. During his employment with UDS and RET, he has performed his work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

17. Michael Daniels has worked as a courier for UDS and RET from approximately 2015 to the present. During his employment with UDS and RET, he has performed his work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

18. John Ransum worked as a courier for UDS and RET from approximately 2016 to the present. During his employment with UDS and RET, he performed his work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

19.     Victor M. Arrocha worked as a courier for UDS and RET for a few months in 2016. During his employment with UDS and RET, he performed his work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

20.     Solomon Smith, Jr. worked as a courier for UDS and RET in 2016. During his employment with UDS and RET, he performed his work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

21.     David Martinez began working as a courier for UDS and RET in 2017. During his employment with UDS and RET, he has performed his work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

22.     Calvin Daniels worked as a courier for UDS and RET during 2015 and 2016. During his employment with UDS and RET, he performed his work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

23.     Angel de Jesus Salinas worked as a courier for UDS and RET from approximately 2014 to 2017. During his employment with UDS and RET, he performed his work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

### Jurisdiction and Venue

24.     Venue is proper in this district because, at all relevant times, UDS and RET employed Plaintiffs in this judicial district.

25.     The Court has jurisdiction over this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## Facts

26.     Defendants are in the business of delivering packages and other goods by courier for its customers in Illinois, Indiana, and Wisconsin.

27.     Though Defendants are separately incorporated, their management structure significantly overlaps.

28.     During the past three years, Defendants used hundreds of couriers to deliver packages to their customers.

29.     During the past three years, Defendants required all Plaintiffs to wear uniforms chosen by UDS and bearing UDS's and RET's logos.

30.     During the past three years, Defendants required all Plaintiffs to arrive at the UDS warehouse early enough in the morning to complete certain deliveries by a set deadline, usually 12:00 p.m.

31.     During the past three years, Defendants required many of the Plaintiffs to display RET's signage on their vehicles.

32.     During the past three years, Defendants instructed Plaintiffs where to pick up packages and where and when to deliver them.

33.     Defendants frequently called Plaintiffs on their cell phones and told them to deliver certain packages before others.

34.     At times during the past three years, Defendants required Plaintiffs to take pictures of certain deliveries to prove that they were completed.

35.     During the past three years, Defendants required Plaintiffs to obtain signatures from certain package recipients.

6

36.     During the past three years, Defendants determined how much their customers would be charged for each delivery, and Plaintiffs and the other couriers could not change that price.

37.     During the past three years, Defendants required Plaintiffs and the other couriers to provide advance notice if they wished to take off work for a vacation day, and Defendants denied the request if too many couriers requested that particular day off.

38.     At times during the past three years, Defendants required Plaintiffs and the other couriers to rent particular equipment from Defendants, including a phone/scanner, in order to carry out their job duties.

39.     The cost of the phone service was automatically deducted from Plaintiffs' and the other couriers' paychecks every two weeks.

40.     During the past three years, Defendants required Plaintiffs and the other couriers to pay a bi-weekly fee to a company named CMS for the cost of occupational accident insurance. The bi-weekly fee was approximately $55-$60.

41.     Defendants automatically deducted the CMS charge from the couriers' paychecks every two weeks.

42.     Defendants required Plaintiffs and the other couriers to enter into an equipment lease with RET pursuant to rules promulgated by the Illinois Commerce Commission ("ICC").

43.     In those leases, RET agreed to maintain exclusive possession and control of Plaintiffs' and the other couriers' vehicles during all periods when the equipment was operated under the lease. 92 Ill. Admin. Code 1360.40.

44.     The lease provided that RET's exclusive control also extended to the drivers of the leased vehicles. 92 Ill. Admin. Code 1360.40.

7

45.     Plaintiffs and the other couriers neither performed their work outside the usual course of RET's business nor did they perform their work outside of all the places of RET's business.

46.     Plaintiffs and the other couriers performed much of their work on the road, at RET's customers' office locations, and at RET's warehouse.

47.     Plaintiffs and the other couriers were not engaged in an independently established trade, occupation, profession, or business.

48.     Plaintiffs and the other couriers were an integral and central part of Defendants' business. Indeed, they provided the very service that Defendants sold to their customers.

49.     Defendants invested far more in their delivery business than Plaintiffs and the other couriers invested in their work. Whereas each Plaintiff may have invested ten or twenty thousand dollars per year in gas and repairs for their vehicles, Defendants invested millions of dollars each year in their delivery business.

## RET's Breach of Equipment Leases

50.     Plaintiffs and RET entered into equipment leases pursuant to rules promulgated by the ICC.

51.     The Illinois Administrative Code required RET to indicate in the ICC leases the responsibility of the "lessee and the lessor for payment of expenses incurred in providing transportation service, either directly or through deductions," including rentals, fuel costs, tolls, insurance, and any other expenses related to the transportation. 92 Ill. Admin. Code § 1360.40.

52.     As a matter of law, the leases required RET to pay for the couriers' transportation expenses, unless the leases expressly made those expenses the responsibility of Plaintiffs. *Id.*

53.     None of the couriers' ICC leases expressly made RET responsible for the phone equipment rentals, magnets, or occupational accident insurance that Defendants deducted from Plaintiffs' wages.

54.     RET breached couriers' ICC leases by deducting from their wages the cost of a phone, magnets, and occupational accident insurance.

55.     In the equipment leases, RET agreed to pay Plaintiffs 56.5% of all delivery charges collected from deliveries that Plaintiffs performed. Defendants uniformly paid the couriers less than the rate outlined in those leases.

56.     Plaintiffs substantially performed all obligations required of them under their contracts with Defendants.

### Defendants' Failure To Pay The Minimum Wage

57.     From July 12, 2014 to the present, Defendants paid Plaintiffs Martinez, Salinas, Smith, Martin, McMillan, Ransom, Thomas, Arrocha, Williams, Michael Daniels, Calvin Daniels, and Butler less than $7.25 per hour in certain workweeks.

58.     After all of the deductions that Defendants made from their paychecks and after Plaintiffs paid for the costs of gasoline and maintaining their vehicles, Plaintiffs Martinez, Salinas, Smith, Martin, McMillan, Ransom, Thomas, Arrocha, Williams, Michael Daniels, Calvin Daniels, and Butler often earned less than the minimum hourly wage for each workweek.

59.     From July 12, 2014 to the present, Defendants misclassified Plaintiffs as independent contractors even though they retained substantial control over the couriers' work.

### Defendants' Failure To Pay Overtime Premium Pay

60.     From July 12, 2014 to the present, Plaintiffs frequently worked for Defendants in excess of forty hours in a workweek.

61.     At all relevant times, Plaintiffs performed their work for Defendants using vehicles with a gross vehicle weight rating of 10,000 pounds or less.

62.     Defendants never paid Plaintiffs one-and-a-half times their regular hourly rate of pay for hours worked in excess of forty in a workweek.

63.     From July 12, 2014 to the present, Defendants misclassified Plaintiffs as independent contractors even though they retained substantial control over the couriers' work.

## Collective Action Allegations

64.     Plaintiffs bring the claims set forth in Count I, alleging violations of the FLSA, as an opt-in representative or collective action on behalf of themselves and an **"Unpaid Overtime/Minimum Wage Class,"** consisting of all couriers who worked for UDS or RET in Illinois between July 12, 2014 to the present and who, during that time, delivered packages using a vehicle with a gross-vehicle weight rating of 10,000 pounds or less. Plaintiffs' attach their "opt-in" forms as Exhibit A.

65.     The class defined above satisfies the requirements of 29 U.S.C. § 216(b).

## I – Fair Labor Standards Act
### Brought By All Plaintiffs Against All Defendants

66.     Plaintiffs incorporate all prior allegations as if fully stated herein.

67.     Defendants employed Plaintiffs and the members of the Unpaid Overtime/Minimum Wage Class because they permitted them to work for Defendants as couriers and exerted substantial control over the manner in which they performed that work.

68.     At all relevant times, Plaintiffs and the members of the Unpaid Overtime/Minimum Wage Class performed work for Defendants using vehicles with a gross vehicle weight rating of 10,000 pounds or less.

69.     Plaintiffs and the members of the Unpaid Overtime/Minimum Wage Class regularly worked for Defendants in excess of forty hours in a workweek.

70.     Defendants never paid Plaintiffs and the members of the Unpaid Overtime/Minimum Wage Class one-and-a-half times their regular hourly rate for hours worked in excess of forty in a workweek.

71.     Defendants frequently paid Plaintiffs Martinez, Salinas, Smith, Martin, McMillan, Ransom, Thomas, Arrocha, Williams, Michael Daniels, Calvin Daniels, and Butler and the members of the Unpaid Overtime/Minimum Wage Class less than a regular rate of $7.25 per hour for each workweek.

72.     Defendants' violations of the FLSA were willful.

## PRAYER FOR RELIEF

Plaintiffs ask the Court to enter judgment against Defendants and issue an order:

a.      Certifying this case as a collective action pursuant to 29 U.S.C. § 216(b);

b.      Entering judgment in the amount of all unpaid overtime and minimum wages due and owing to the Unpaid Overtime/Minimum Wage Class members as well as all applicable liquidated damages;

c.      Declaring that Defendants' conduct violated the FLSA;

d.      Awarding Plaintiffs their reasonable attorneys' fees and costs of this action;

e.      Awarding pre-judgment and post-judgment interest on all monetary amounts awarded in this action; and

f.      Awarding such other and further relief as this Court deems appropriate and just.

### Count II – Illinois Minimum Wage Law
### Brought By All Plaintiffs Against All Defendants

73.     Plaintiffs incorporate all prior allegations as if fully stated herein.

11

74.     Defendants employed Plaintiffs because they permitted them to work for Defendants as couriers and exerted substantial control over the manner in which they performed that work.

75.     At all relevant times, Plaintiffs performed work for Defendants using vehicles with a gross vehicle weight rating of 10,000 pounds or less.

76.     Plaintiffs regularly worked for Defendants in excess of forty hours in a workweek.

77.     Defendants never paid Plaintiffs and members of the Unpaid Overtime/Minimum Wage Class one-and-a-half times their regular hourly rate for hours worked in excess of forty in a workweek.

78.     Defendants frequently paid Plaintiffs Martinez, Salinas, Smith, Martin, McMillan, Ransom, Thomas, Arrocha, Williams, Michael Daniels, Calvin Daniels, and Butler less than $8.25 per hour for each workweek.

## PRAYER FOR RELIEF

Plaintiffs ask the Court to enter judgment against Defendants and issue an order:

a.      Declaring that the actions complained of herein violate 820 ILCS 105/4;

b.      Awarding Plaintiffs compensatory damages in an amount be determined at trial;

c.      Awarding Plaintiffs prejudgment interest on the back wages in accordance with 815 ILCS 205/2;

d.      Awarding Plaintiffs unpaid wages due as provided by the IMWL;

e.      Awarding penalties in the amount of 2% of all unpaid wages for each month the unpaid wages remain delinquent, as contemplated by 820 ILCS 105/12(a);

f.      Awarding reasonable attorneys' fees and costs of this action as provided by the IMWL;

g.      Providing injunctive relief requiring Defendants to pay all statutorily-required wages and penalties and barring future violations; and

h.     Awarding such other relief as this Court deems just and proper.

## Count III – Illinois Wage Payment and Collection Act
### Brought By All Plaintiffs Against RET

79.     Plaintiffs incorporate all prior allegations as if fully stated herein.

80.     RET employed Plaintiffs because (1) it permitted class members to work for RET as couriers and exerted substantial control over the manner in which they performed that work, (2) Plaintiffs were not in an independently established trade, occupation, profession, or business, and (3) Plaintiffs did not perform work outside all of RET's places of business or outside the usual course of RET's business.

81.     RET deducted amounts from Plaintiffs' agreed wages without their express written consent at the time of the deductions.

82.     RET did not pay Plaintiffs' all wages owed under their equipment leases because it deducted sums from Plaintiffs wages for uniforms, insurance, and phones.

83.     RET paid Plaintiffs substantially less than the commission owed under the applicable equipment leases.

## PRAYER FOR RELIEF

Plaintiffs ask the Court to enter judgment against RET and issue an order:

a.     Declaring that the actions complained of herein violated the IWPCA, 820 ILCS 115/3, 4 & 9;

b.     Awarding Plaintiffs unpaid wages as provided by the IWPCA;

c.     Awarding Plaintiffs penalties in the amount of 2% of all unpaid wages for each month the unpaid wages remain delinquent, as contemplated by 820 ILCS 115/14(a);

d.     Requiring RET to pay all statutorily-required wages and enjoining Defendants from future IWPCA violations;

e.     Awarding Plaintiffs prejudgment interest on the back wages in accordance with 815 ILCS 205/2;

13

f. Awarding the attorneys' fees and costs of this action as provided by the IWPCA; and

g. Awarding such other relief as this Court deems just and proper.

**Count IV – Breach of Contract**
**Brought By All Plaintiffs Against RET**

84. Plaintiffs incorporate all prior allegations as if fully stated herein.

85. RET contracted with Plaintiffs though equipment leases required by the Illinois Commerce Commission.

86. None of the Plaintiffs' ICC leases expressly made Plaintiffs responsible for the phone equipment rentals, uniforms, or occupational accident insurance that RET deducted from Plaintiffs' wages.

87. RET breached Plaintiffs' ICC leases by deducting from their wages the cost of a phone, uniforms, and occupational accident insurance.

88. Plaintiffs substantially performed all obligations required of them under their contracts with RET.

89. RET paid Plaintiffs substantially less than the commission owed under the applicable equipment leases.

**PRAYER FOR RELIEF**

Plaintiffs ask the Court to enter judgment against RET and issue an order:

a. Awarding Plaintiffs damages on account of Defendants' breaches of class members' equipment leases;

b. Awarding Plaintiffs prejudgment interest on all damages awarded;

c. Awarding Plaintiffs' attorneys' fees based on the common fund doctrine.

d. Awarding such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues as to which a jury trial is available.

Respectfully submitted,

/s/Christopher J. Wilmes
One of the Attorneys for the Plaintiffs

Matthew J. Piers (Illinois Bar No. 2206161)
Christopher J. Wilmes (Illinois Bar No. 6287688)
HUGHES, SOCOL, PIERS, RESNICK & DYM, LTD.
70 W. Madison St., Suite 4000
Chicago, IL 60602
312-580-0100